IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

DENNIS ANDRES

                Plaintiff,

v.                                          Case No. 16-1079-JTM

CITY OF COFFEYVILLE, KANSAS,

                Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Dennis Andres seeks damages pursuant to 42 U.S.C. § 1983 based on a claim that defendant City of Coffeyville, Kansas, terminated his employment in retaliation for exercising his right to free speech. Defendant moves for summary judgment (Dkt. 29) and argues that it had a legitimate basis for terminating plaintiff—Montgomery County Attorney Larry Markle ("CA Markle") placed plaintiff on the *Giglio* list and further refused to prosecute any cases where plaintiff was involved. Plaintiff responds that defendant's reason is pretextual and flows directly from his decision to exercise his First Amendment right of free speech. For the reasons provided below, the court denies defendant's motion.[1]

**I.    Uncontroverted Facts**

---

[1] The court heard oral argument on July 20, 2017.

1

While there are several controverted facts[2], the court finds the following facts to be uncontroverted for purposes of summary judgment.

Defendant hired plaintiff as a police officer in 1986. Over the next 29 years, plaintiff climbed up the chain of command and became a captain, second in command. About halfway through his career, plaintiff met an eight-year-old kid named Brazell Scott ("Scott") who was caught shoplifting. Plaintiff tried to mentor Scott, and even allowed Scott to reside in his home at different times. When Scott was 13 years old, he moved to Texas to live with his father; but Scott later returned to Coffeyville sometime in 2011.

In July 2012, a shooting took place in Coffeyville. Sometime later, Scott came to plaintiff's house because he wanted to hire plaintiff's wife to make a birthday cake for his daughter's birthday. As Scott crossed through plaintiff's living room into the kitchen, plaintiff asked Scott how things were going. Scott replied something to the effect of "you know, they messin' with me." Nothing more was said on the matter, but plaintiff knew that Scott was referring to James Logan and his friends.

On September 28, 2012, Scott shot James Logan and Latrelle Boyd. Scott turned himself in and was charged with their murders. Scott claimed self-defense.

Six months after Scott's case was filed, two attorneys from the Kansas Attorney General's office, Greg Benefield and Amanda Voth (the "AAGs"), entered their appearances on behalf of the state. Scott's defense counsel later subpoenaed plaintiff.

---

[2] To the extent that relevant facts are controverted, the court resolves these in favor of plaintiff—the nonmoving party.

Plaintiff contacted the AAGs and told them about his subpoena; however, according to plaintiff, the AAGs seemed disinterested in talking with him. Plaintiff claims that he told the AAGs of his encounter with Scott.

Plaintiff met with the defense's investigator on two separate occasions. During their second meeting, plaintiff informed the investigator that Scott had told him "they're messin' with me."

In opening statements at Scott's trial, defense counsel informed the jury that plaintiff would testify that Scott told him "they're messin' with me" before he shot both men. Plaintiff testified about his encounter with Scott at his house prior to the shootings, and the jury ultimately acquitted Scott of both murders.

CA Markle and the AAGs were upset. They believed that plaintiff withheld substantial information and that his trial testimony differed from the information he previously told them. As a result, CA Markle notified City of Coffeyville Police Chief Anthony Celeste ("Chief Celeste"), via a letter dated February 3, 2014, that he considered plaintiff to have *Giglio* issues and would not file criminal charges in a different case because of plaintiff's involvement.

An administrative complaint was filed against plaintiff, and an internal investigation into the matter ensued to determine if plaintiff withheld exculpatory evidence. Plaintiff cooperated with the investigation and passed a polygraph test.

On August 21, 2014, Chief Celeste determined the complaint was "Not Sustained"—meaning there was insufficient evidence to support the allegations. Plaintiff thought the matter was resolved. Then, in a letter dated March 30, 2015, CA

Markle informed Interim City Manager James Grimmett that he would not prosecute any cases in which plaintiff was involved. CA Markle also demanded access to defendant's personnel files and Enterpol database for its police officers.

On April 7, 2015, CA Markle notified Chief Celeste that he was declining to prosecute a case in which the video showed that plaintiff had spoken to the suspect, but there was no audio. CA Markle noted that plaintiff was not a credible witness due to *Giglio* issues and further that Chief Celeste had not provided other video/audio from other officers present at the scene as requested. Defendant terminated plaintiff that same day.

## II.     Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Communs.*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol–Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### III.    Discussion

Plaintiff sues defendant for infringing on his First Amendment rights. "Under 42 U.S.C. § 1983, a plaintiff is entitled to recover damages from a person acting under color of state law who violates his constitutional rights." *Seifert v. Unified Gov't of Wyandotte Cty./Kansas City*, 779 F.3d 1141, 1150–51 (10th Cir. 2015). However, plaintiff is a government employee; thus, he does not enjoy First Amendment rights to the same extent as a private citizen. *See id.* at 1151. ("Because '[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions,' not every restriction on a public employee's speech amounts to a deprivation of First Amendment rights.") (internal citation omitted).

Retaliation cases based on First Amendment violations brought by government employees against their employer are guided by the *Garcetti/Pickering* test, which has five elements: (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as an employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would reach the same employment decision in the absence of the protected conduct. *See Garcetti v. Ceballos*, 547 U.S. 410 (2006), *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014). "The first three elements are typically questions of law (though they can turn on disputed issues of fact), while the last two are typically questions of

fact[]" for the jury. *Seifert*, 779 F.3d at 1151; *Trant*, 754 F.3d at 1165. Defendant argues that plaintiff has failed to meet his burden as to the first, fourth, and fifth elements.[3]

### A. Plaintiff's speech was protected.

Defendant argues that plaintiff's speech was unprotected because it was made pursuant to his official duties. If the speech in controversy is made pursuant to an employee's official duties, then it is unprotected speech and may be the reason for terminating an employee. *Lane v. Franks*, 134 S. Ct. 2369, 2378 (2014). Conversely, if the speech in controversy concerns matters outside an employee's official duties, then it is protected speech. *Id.*

Plaintiff responds that his speech was outside the scope of his official duties. Plaintiff had a brief encounter with Scott in his home while he was off duty. Plaintiff argues that there was nothing to report; Scott simply told him "they're messin' with me." Plaintiff did not investigate the shootings and initiated each encounter he had with the prosecution. The defense, as opposed to the state, subpoenaed plaintiff as a witness to testify on Scott's behalf.

Plaintiff parallels his situation to *Seifert*, and the court agrees that it governs the outcome here. In *Seifert*, the Tenth Circuit held that Seifert's speech was protected because it was in compliance with a subpoena, and although it concerned the nature of his work, it was not part of it. 779 F.3d at 1152. Nor was it like the routine testimony of law-enforcement agents in support of criminal prosecutions. *Id.*

---

3 Defendant does not claim that plaintiff fails to meet his burden with respect to the second and third elements. Regardless, the court finds that Scott's criminal trial was a matter of public concern and further that plaintiff had a duty to testify truthfully during Scott's trial. The defense subpoenaed plaintiff as a defense witness. Defendant was not involved.

The parties dispute whether plaintiff told the AAGs about Scott's statement in plaintiff's home during the pretrial investigation. Defendant argues that it was plaintiff's pretrial statements—or lack thereof—that was inconsistent because he failed to provide substantive information. Defendant argues that plaintiff's silence was not protected speech.

At this juncture, the court construes all controverted facts in favor of plaintiff, the nonmoving party. Plaintiff claims that he told the AAGs about Scott's statement. Regardless, the First Amendment protects the right to speak as well as the general right not to speak. *Koch v. City of Del City*, 660 F.3d 1228, 1243 (10th Cir. 2011). Plaintiff's speech stemmed from a comment Scott told plaintiff in his living room. It did not arise from an event when plaintiff was on duty. Plaintiff argues that this interaction did not require him to prepare a report. Scott had knowledge of his own statement and this awareness diminished any responsibility of the prosecution to disclose it. *See generally United States v. Quintanilla*, 193 F.3d 1139, 1149 (10th Cir. 1999) (noting "a defendant's independent awareness of the exculpatory evidence is critical in determining whether a *Brady* violation has occurred[]"). Therefore, the court finds that plaintiff has satisfied his burden to show that his speech was protected under the First Amendment.

### B. Plaintiff's termination was related to his protected speech.

Defendant argues that there is no evidence of a retaliatory motive in this case. It claims that the motivating factors behind plaintiff's termination is the fact that CA Markle "*Giglioed*" plaintiff and further said he would not prosecute any criminal cases in which plaintiff was involved. Defendant refers to CA Markle's independent

7

discretion to place anyone on the *Giglio* list, and once CA Markle placed plaintiff on this list and refused to prosecute two cases, defendant's hands were tied. Defendant argues that CA Markle's conduct was an intervening cause, unrelated to plaintiff's protected speech.

Although defendant tries to base its decision on CA Markle's actions alone, defendant made the decision to terminate plaintiff. Plaintiff argues that the court should be dubious of defendant's *Giglio* argument and that defendant's reasons for his termination are inconsistent, thereby suggesting pretext. The court finds that plaintiff has presented sufficient evidence that a reasonable jury could find pretext. Regardless, the fact of the matter is that defendant's termination derived from plaintiff's testimony. Defendant claims it is not the bad guy here; yet it cannot escape the fact that it made the decision to terminate plaintiff.

Because defendant's decision stemmed from plaintiff's pretrial communications with the AAGs and trial testimony, a reasonable jury could find that plaintiff's protected speech was the motivating factor in his termination. Similarly, there is no real indication that defendant would have terminated plaintiff absent the protected speech.[4] Plaintiff has made a sufficient showing that a jury should resolve the fourth and fifth elements of the *Garcetti/Pickering* test.

## IV.   Conclusion

---

[4] Defendant briefly mentions that plaintiff failed to draft a report about his conversation with Scott. But plaintiff argues that the failure to prepare a report was not a reason defendant cited when it terminated plaintiff, and therefore, is pretext.

The court finds that the case needs further development, and summary judgment is not appropriate. Plaintiff has established that his speech was protected under the First Amendment, and a reasonable jury could find that plaintiff's termination was because of his protected speech before and during in Scott's trial.

IT IS THEREFORE ORDERED this 27th day of July, 2017, that defendant's motion for summary judgment (Dkt. 29) is DENIED.

                                                                                         s/ J. Thomas Marten
                                                                                         J. Thomas Marten, Judge